1

2

3                IN THE UNITED STATES DISTRICT COURT

4              FOR THE NORTHERN DISTRICT OF CALIFORNIA

5

6

7   CLARISSA C. CORTEZ,                    No. C 11-1019 CW

8           Plaintiff,                     ORDER GRANTING
                                           DEFENDANT PACIFIC
9       v.                                 MORTGAGE
                                           CONSULTANTS'
10  NEW CENTURY MORTGAGE CORPORATION,      MOTION TO DISMISS
    et al.,

11          Defendants.

12  ═══════════════════════════════/

13

14

15      Defendant Pacific Mortgage Consultants, Inc. (Pacific) moves

16  to dismiss all the claims alleged against it in Plaintiff's

    complaint.  Pro se Plaintiff Clarissa Cortez opposes the motion.[1]

17  The motion was taken under submission and decided on the papers.

18  Having considered all the papers filed by the parties, the Court

19  grants Pacific's motion to dismiss. [2]

20

21

22  _____

23          [1] Pacific argues that the Court should not consider
    Plaintiff's opposition because it was filed one week after the
24  Court-ordered deadline.  The Court will consider Plaintiff's
    opposition.

25
            [2] Pacific's request for judicial notice is granted.  See Fed.
26  R. Civ. P. 12(d); Mir v. Little Co., 844 F.2d 646, 649 (9th Cir.
    1988) (court may take judicial notice of matters of public record
27  without converting motion to dismiss into motion for summary
    judgment).

28

BACKGROUND

On January 21, 2011, Plaintiff filed this mortgage-related case in state court and, on March 4, 2011, Defendant Saxon Mortgage Services, Inc. (Saxon) removed it to federal court.  On November 3, 2011, this Court issued on Order Granting in Part Saxon's Motion to Dismiss, in which it dismissed all but one claim Plaintiff asserted against Saxon.  The following are the facts that are relevant to Pacific's motion to dismiss.

In 2002, Plaintiff financed the purchase of her residence located at 2609 Covelite Way, Antioch, California with a loan in the amount of $288,100 from America's Wholesale Lender.  See Request for Judicial Notice (RJN), Ex. D.  In January 2004, Plaintiff refinanced the loan with an adjustable rate loan in the amount of $387,000 from New Century Mortgage.  See RJN, Ex. E.  In June 2004, Plaintiff refinanced the loan with an adjustable rate mortgage in the amount of $443,207 from Loan Management Services, Inc.  See RJN, Ex. F.  On August 23, 2005, Plaintiff refinanced the loan with an adjustable rate mortgage in the amount of $560,000 from New Century Mortgage.  See RJN, Ex. G.  This is the loan that is the subject of this litigation.  The subject loan was secured by a deed of trust that had an Adjustable Rate Rider disclosing that the loan payments were interest-only for five years and that the interest rate was locked for two years.  Id. at 17.  The Adjustable Rate Rider, dated August 23, 2005, was signed by Plaintiff and indicated that the loan had an initial interest rate of 6.2 percent and provided for changes in the interest rate and monthly payments as follows:

United States District Court
For the Northern District of California

4. Interest Rate and Monthly Payment Changes

(A) The interest rate I will pay may change on the first day of September, 2007 and on the same day of every 6th month thereafter.  Each date on which my interest rate could change is called an "Interest Rate Change Date."  <u>Id.</u>

(B) Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index plus a margin.  The "Index" is the average of interbank offered rates for six-month dollar deposits in the London market (LIBOR), as published in the Wall Street Journal "Money Rates" Table.

. . .

(C) Calculation of Changes

On each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding five and three-quarters percentage points (5.750%) to the Current Index. . . . Subject to the limits stated in Section 4(D) below, this amount will be my new interest rate until the next Interest Rate Change Date.

. . .

(D) Limit on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 7.700% or less than 6.200%. Thereafter, my interest rate will never be increased or decreased on any single Interest Rate Change Date by more than one and one half percentage points (1.5%) from the rate of interest I have been paying for the preceding month.  My interest rate will never be greater than 13.200% or less than 6.200%.

The complaint alleges that Pacific was the mortgage broker on the subject loan.  Comp. ¶ 7.  Paragraphs 15 and 16 contain general allegations about mortgage brokers, as follows:

For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so

3

> unaffordable that the borrowers are now faced with either
> bankruptcy or foreclosure. . . .
>
> The loan product sold to Plaintiff in this case was exactly
> the kind of loan that has contributed to our national
> problem.  The Defendants were aware of this trend, and
> possessed the foresight to advise Plaintiff of this risk.
> They intentionally concealed the negative implications of the
> loan they were offering, and as a result, Plaintiff faces the
> potential of losing [her] home to the very entity and
> entities who placed [her] in this position.

Under Plaintiff's Truth in Lending Act claim, she alleges

that Pacific, along with the lender, New Century Mortgage

Corporation,

> shuffled Plaintiff in, had Plaintiff sign on the dotted line,
> and shuffled Plaintiff out.  Never was Plaintiff even given
> the required documents so that [she] could conduct [her] own
> due diligence to find out what exactly this adjustable rate
> mortgage was going to turn into. . . . Plaintiff is a
> layperson, and does not have a good command of the English
> language (Tagalog is her native language, not English).  The
> representative at New Century and Pacific painted a very rosy
> picture for Plaintiff, and convinced [her] that [she was]
> more than able to afford the home [she] was applying for.
> . . . It wasn't until recently when Plaintiff's payments
> changed dramatically that she realized what she had gotten
> herself into.

Comp. ¶ 75.

                           LEGAL STANDARD

    A complaint must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  Fed. R.

Civ. P. 8(a).  When considering a motion to dismiss under Rule

12(b)(6) for failure to state a claim, dismissal is appropriate

only when the compliant does not give the defendant fair notice of

a legally cognizable claim and the grounds on which it rests.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In

considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken a true.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

When granting a motion to dismiss, the court is generally required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990).  In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint."  Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990).

## DISCUSSION

In her complaint, Plaintiff alleges twenty-four causes of action, which are listed in the Court's November 3, 2011 Order. Her allegations distinguish only minimally the conduct undertaken by the four named Defendants.  The Court will address only those claims that are relevant to Pacific as Plaintiff's mortgage broker.  Under California law:

A mortgage loan broker is customarily retained by a borrower to act as the borrower's agent in negotiating an acceptable loan. All persons engaged in this business in California are required to obtain real estate licenses. Thus, general principles of agency combine with statutory duties created by the Real Estate Law to impose upon mortgage loan brokers an obligation to make a full and accurate disclosure of the terms of a loan to borrowers and to act always in the utmost good faith toward their principals. . . . A real estate licensee is charged with the duty of fullest disclosure of all material facts concerning the transaction that might affect the principal's decision.

UMET Trust v. Santa Monica Medical Investment Co., 140 Cal. App. 3d 864, 869 (1983).

I. Res Judicata

Pacific argues that Plaintiff's entire complaint is precluded by the previous dismissal with prejudice of claims against Defendant Saxon Mortgage Services, Inc. (Saxon) in a prior case, Cortez v. New Century Corp., C 10-4631 RS, Docket No. 25. Plaintiff does not respond to this argument.

In case number C 10-4631 RS, Plaintiff sued several defendants, including Pacific and Saxon. Saxon was the only defendant that filed a motion to dismiss. The court granted Saxon's motion to dismiss with prejudice, stating, "Plaintiff filed no opposition to [Saxon's] motion and did not appear at the hearing. The motion is granted, without leave to amend, on the grounds that the complaint fails to state a claim against Saxon, and that the purported claims are barred by the applicable statute of limitations." After this order was filed, Plaintiff did not respond to any orders of the court. The court subsequently dismissed Plaintiff's entire complaint, including the claims

against Pacific, without prejudice for failure to prosecute.  <u>See</u> C 10-4631 RS Docket No. 28.

Pacific argues that, pursuant to the doctrine of res judicata, the order dismissing with prejudice the claims against Saxon (1) bars Plaintiff from pursuing this action; (2) bars Plaintiff's claims against Pacific on statute of limitations grounds; and (3) bars Plaintiff's claims against Pacific on the ground that she has failed sufficiently to state any facts supporting them.  <u>Res judicata</u> bars subsequent lawsuits only when there is "(1) an identity of claims; (2) a final judgment on the merits in the first lawsuit; and (3) identity or privity between parties."  <u>Western Radio Servs. Co., Inc. v. Glickman</u>, 123 F.3d 1180, 1192 (9th Cir. 1997).

The Court declines to apply res judicata to Plaintiff's claims against Pacific in this case based on the order in case number C 10-4631 RS, dismissing Plaintiff's claims against Saxon. Furthermore, the claims against Pacific were dismissed without prejudice for failure to prosecute, which is not a final judgment on the merits and is without res judicata effect.  <u>See Oscar v. Alaska Dep't of Educ. and Early Dev.</u>, 541 F.3d 978, 981 (9th Cir. 2008).

II. Statute of Limitations

Pacific argues that the claims alleged against it are barred by the statute of limitations given that they accrued on August 24, 2005, the day Plaintiff signed the deed of trust and the

United States District Court
For the Northern District of California

Adjustable Rate Rider.  She filed this complaint on January 21, 2011, more than five years later.  The relevant statutes of limitations are summarized as follows:  the fourth cause of action, for contractual breach of the implied covenant of good faith and fair dealing, is subject to a two year statute of limitations when predicated on a tort theory, see Archdale v. American Intern. Specialty Lines Ins. Co., 154 Cal. App. 4th 449, 473 (2007) (citing Cal. Civ. Proc. Code § 339), and a four year statute of limitations when predicated on a contract theory, see Frazier v. Metropolitan Life Ins. Co., 169 Cal. App. 3d 90, 102 (1985) (citing Cal. Civ. Proc. Code § 337);[3] the fifteenth cause of action, for fraud, is subject to a three year statute of limitations, see Miller v. Bechtel Corp., 33 Cal. 3d 868, 873 (1983) (Code of Civil Procedure § 338 sets forth a three-year limitation period for tort actions based on fraud or mistake); the sixteenth and twentieth causes of action, under California Business and Professions Code section 17200 for unfair and deceptive acts and practices and predatory lending, are subject to a four year statute of limitations, see Cal. Bus. & Prof. Code

_____

[3] Pacific contends that the breach of covenant claim is premised on a tort theory of liability because it is based on allegations of misrepresentations and because Plaintiff has not alleged the existence of a contract between Pacific and herself. Plaintiff does not respond to this argument in her opposition and, therefore, must concede that the breach of covenant claim is predicated on a tort theory, which is subject to a two-year statute of limitations.

United States District Court
For the Northern District of California

§ 17208;[4] the seventeenth cause of action for breach of fiduciary duty is subject to a three-year statute of limitations if based on fraud, see Cal. Civ. Proc. Code § 338, or a two-year statute if based on professional negligence, see Thomson v. Canyon, 198 Cal. App. 4th 594, 606 (2011) (citing Cal. Civ. Proc. Code § 339(1)); all other causes of action are subject to a four-year statute of limitations under California Code of Civil Procedure section 343, which provides that any action that does not have a statute of limitations assigned to it must be commenced within four years after it accrues.

Plaintiff does not dispute that she filed her complaint after the statutes of limitations on her claims had run, but argues that, because she only recently discovered the existence of her claims when her loan payments increased, equitable tolling applies. She argues that, based upon the fact that her native language is Tagalog and she speaks little English, she had no way of knowing the significance of the terms in the loan documents. Plaintiff also alleges that she called representatives at the lender and at Pacific who convinced her that she was able to afford the subject loan and failed to explain that the initial

---

[4] Pacific correctly cites Snapp & Assocs. Ins. Servs., Inc. v. Malcolm Bruce Burlingame Robertson, 96 Cal. App. 4th 884, 891 (2002), for the proposition that the discovery rule, which delays accrual of certain causes of action until the plaintiff has actual or constructive knowledge of facts giving rise to the claim, does not apply to actions under section 17200. However, Snapp stated that the statute of limitations in section 17200 is subject to equitable tolling. Id.

payment structure was only temporary and payments would soon go up

dramatically.  Comp. at ¶ 75.  She also alleges that she never

received required loan documents so she could not conduct her own

due diligence.  Id.

Equitable tolling requires more than just the plaintiff's

ignorance of the claims.  In general,

> equitable tolling may be applied if, despite all due
> diligence, a plaintiff is unable to obtain vital information
> bearing on the existence of his claim. . . . If a reasonable
> plaintiff would not have known of the existence of a possible
> claim within the limitations period, then equitable tolling
> will serve to extend the statute of limitations for filing
> suit until the plaintiff can gather what information he
> needs.

Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000).

For equitable tolling to apply in a mortgage case, plaintiffs

would have to allege undisclosed credit terms or fraudulent

concealment on the part of the loan originator that prevented them

from discovering their claims.  Meyer v. Ameriquest Mortg. Co.,

342 F.3d 899, 902 (9th Cir. 2003); Ancheta v. Golden Empire

Mortg., Inc., 2011 WL 826177, at *3 (N.D. Cal.).  District courts

in this circuit have split on the applicability of equitable

tolling in residential mortgage cases when the loan documents are

not translated into the borrower's native language.  See Diaz v.

Bank of America Home Loan Servicing, 2010 WL 5313417, at *3-4.

(C.D. Cal.) (noting cases where failure to translate mortgage

terms into Spanish for non-English speakers held sufficient to

invoke equitable tolling, but following cases denying equitable

tolling where plaintiffs failed to act diligently to have their loan documents translated or reviewed).

Plaintiff alleges more than the failure to translate the loan documents into Tagalog.  Her allegations that representatives from Pacific and from the lender made misrepresentations to her about her loan payments and that the originator of the loan withheld loan documents from her support her argument for equitable tolling.  However, the allegations are insufficient because she does not specify when or how the change in her loan payments alerted her to her claims against Pacific.  The Adjustable Interest Rider indicates that the first interest rate change date was in September, 2007.  If that was the date Plaintiff became aware of her claims, the claims with a four-year statute of limitations would be timely, but claims with statutes of limitations of one, two and three years would be precluded.

Because the complaint does not adequately allege equitable tolling of the statutes of limitations for Plaintiff's claims, Pacific's motion to dismiss is granted, and Plaintiff is granted leave to amend.

III. Failure to State a Claim Against Pacific

Pacific argues that, with the exception of the fourth cause of action for breach of the implied covenant of good faith and fair dealing and the seventeenth cause of action for breach of fiduciary duty, Plaintiff's complaint fails to allege sufficient facts to state any causes of action against it.

A. Claims Not Directed at Pacific as Mortgage Broker

As stated above, Pacific is a mortgage broker, an entity that is involved in the marketing and origination of loans.  As a result, the following claims against Pacific are dismissed without leave to amend because they are directed at other phases of the mortgage and foreclosure process:  (1) Claim Two for injunctive relief to enjoin the sale of the subject property in a foreclosure sale; (2) Claim Three to determine the nature, extent and validity of the lien; (3) Claims Seven through Eleven and Claim Thirteen for violations of various sections of the California Civil Code relating to the lending of money and the duty of a lender to provide notice of how adjustable rate loans work; (4) Claim Fourteen for rescission; and (5) Claims Nineteen and Twenty-one through Twenty-four for unconscionability, quiet title, failure to modify loan, wrongful foreclosure, and a temporary restraining order and preliminary injunction to stop the foreclosure.

B. Fifth Claim for Violation of Truth in Lending Act

The Truth in Lending Act (TILA), 15 U.S.C. §§ 1601 et seq., was enacted "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit."  Yamamoto v. Bank of N.Y., 329 F.3d 1167, 1169 (9th Cir. 2003) (citing 15 U.S.C. § 1601(a)).  If required disclosures are not made, the consumer may recover damages or seek to rescind the loan.  Id. at 1170; Martinez v. EMC Mortg. Corp., 2009 WL 2043013,

12

*5 (E.D. Cal.).  The only parties who can be liable for TILA violations are the original creditor and assignees of that creditor.  15 U.S.C. §§ 1640, 1641; Redic v. Gary H. Watts Realty Co., 762 F.2d 1181, 1185 (4th Cir. 1985); Nevis v. Wells Fargo Bank, 2007 WL 2601213, *2 (N.D. Cal.).

Pacific, as the mortgage broker, cannot be held liable under TILA.  Therefore, Pacific's motion to dismiss this claim is granted.  Dismissal of this claim is without leave to amend, as amendment would be futile.

C. Sixth Claim for Violation of Real Estate Settlement Procedures Act

In her complaint, Plaintiff alleges that Pacific was unjustly enriched because a yield spread premium that was not disclosed to her increased the interest rate of the loan.  Comp. at ¶ 87, 89. There are three sections in the Real Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601 et seq., that provide a private right of action: (1) § 2605 requires disclosure to a loan applicant of whether the servicing of the loan may be assigned, sold or transferred; notice to the borrower at the time of transfer; and responses by the loan servicer to qualified written requests by the borrower; (2) § 2607 prohibits kickbacks; and (3) § 2608 prohibits sellers from requiring buyers to purchase title insurance on a property as a condition of its sale.

Apparently, Plaintiff alleges her claim under § 2607, which prohibits kickbacks.  For violations of § 2607, RESPA provides a

United States District Court
For the Northern District of California

one-year statute of limitations from the date of the occurrence of the alleged violation. <u>King v. Capitol Commerce Mortg. Co.</u>, 2012 WL 90407, *3 (E.D. Cal.). As discussed above, Plaintiff argues that equitable tolling applies to her claims. It is unlikely that Plaintiff can overcome the one-year statute of limitations that applies to this claim. However, this claim is dismissed with leave to amend.

D. Claim Twelve for Violation of Civil Code § 1632

Plaintiff may be able to state a claim against Pacific under Civil Code section 1632, which requires any person engaged in a trade or business who negotiates primarily in one of several foreign languages, including Tagalog, to provide the other party to the agreement with a translation of the contract or agreement in the language in which the contract or agreement was negotiated. Cal. Civ. Code § 1632(b). Section 1632 applies to the negotiation of only certain types of contracts and loans, which generally excludes loans secured by real property. <u>ING Bank, FSB v. Ahn</u>, 717 F. Supp. 2d 931, 933 (N.D. Cal. 2010). However, real property loans negotiated by a broker and for use primarily for personal, family or household purposes are covered. <u>Id.</u> (Civil Code § 1632(b)(4) extends statute's protection to loans subject to Business & Professions Code § 10240, which includes real estate property loans negotiated by real estate brokers). Plaintiff alleges that her primary language is Tagalog. However, she does not allege that Pacific primarily negotiates business in Tagalog

14

or that her loan was negotiated in Tagalog.  Therefore, this claim is dismissed with leave to amend for Plaintiff to cure these deficiencies, if she truthfully can do so.

E. Fifteenth Claim for Fraud

Pacific argues that Plaintiff's allegations of fraud are not plead with the required specificity.

The elements of fraud under California law are as follows: (1) a misrepresentation; (2) knowledge of the falsity; (3) intent to defraud or to induce reliance; (4) justifiable reliance; and (5) resulting damage.  Seeger v. Odell, 18 Cal. 2d 409, 414 (1941); Cal. Civ. Code § 1709.  The misrepresentation element can be demonstrated by a fraudulent concealment of facts.  Outboard Marine Corp. v. Superior Court, 52 Cal. App. 3d 30, 37 (1975).

In a case that has been removed to federal court, the pleading requirements for a claim of fraud are analyzed under Federal Rule of Civil Procedure 9(b).  Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1103 (9th Cir. 2003) ("It is established law, in this circuit and elsewhere, that Rule 9(b)'s particularity requirement applies to state-law causes of action.").  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b).  The allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."

United States District Court
For the Northern District of California

<u>Semegen v. Weidner</u>, 780 F.2d 727, 731 (9th Cir. 1985).  Statements of the time, place and nature of the alleged fraudulent activities are sufficient, <u>Wool v. Tandem Computers, Inc.</u>, 818 F.2d 1433, 1439 (9th Cir. 1987), provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false."  <u>In re GlenFed, Inc., Sec. Litig.</u>, 42 F.3d 1541, 1548 (9th Cir. 1994).

Under her cause of action for fraud, Plaintiff alleges:

> The credit application and or available W-2's provided by Plaintiff was enough, in addition to the application itself for Defendants to know what type of loan should be offered, and what Plaintiff could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud.

Comp. at ¶ 134.

Plaintiff also alleges, "Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain."  Comp. at ¶ 135.

Plaintiff has not plead her fraud cause of action with sufficient particularity.  She makes allegations against "Defendants" without specifying which Defendant and which person in particular made false statements to her or concealed material facts from her.  She need not necessarily give the name of the person at Pacific who made misrepresentations to her or concealed material facts from her, but must at least indicate the role or title of the employee and in what context the misrepresentations

were made or the facts were concealed.  She must also allege that

she justifiably relied on such misrepresentations or omissions.

Accordingly the fraud claim is dismissed with leave to amend

for Plaintiff to remedy the noted deficiencies, if she can

truthfully do so.

F. Sixteenth and Twentieth Claims based on Unfair Competition Law

Pacific argues that Plaintiff's allegations are insufficient

to state a claim against it under California's Unfair Competition

Law (UCL).

The UCL prohibits any "unlawful, unfair or fraudulent

business act or practice."  Cal. Bus. & Prof. Code § 17200.  The

UCL incorporates other laws and treats violations of those laws as

unlawful business practices independently actionable under state

law.  Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042,

1048 (9th Cir. 2000).  Violation of almost any federal, state or

local law may serve as the basis for a UCL claim.  Saunders v.

Superior Court, 27 Cal. App. 4th 832, 838-39 (1994).  In addition,

a business practice may be "unfair or fraudulent in violation of

the UCL even if the practice does not violate any law."  Olszewski

v. Scripps Health, 30 Cal. 4th 798, 827 (2003).  "A fraudulent

business practice is one in which members of the public are likely

to be deceived."  Morgan v. AT&T Wireless Servs., Inc., 177 Cal.

App. 4th 1235, 1254 (2009).  A UCL claim based on fraud is subject

to Rule 9(b)'s specificity requirement.  Kearns v. Ford Motor Co.,

567 F.3d 1120, 1125-26 (9th Cir. 2009).  To amount to an unfair business practice (1) the injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) the injury must be one that the consumer could not reasonably have avoided.  Camacho v. Automobile Club of Southern California, 142 Cal. App. 4th 1394, 1402 (2006) (adopting one of three possible definitions of unfair business practice).

In the sixteenth cause of action, Plaintiff alleges that Defendants failed to undertake a diligent underwriting process for her loan, failed to disclose facts and circumstances relating to how the adjustable interest rate would work and placed Plaintiff in a loan which she could not afford.  Comp. at ¶ 139.  She also alleges that the current loan suffers from the following violations: lack of broker disclosure and mortgage loan origination agreement; lack of lender initial disclosures; flawed underwriting; appraisal fraud; truth in lending disclosure errors; improper notice of right to cancel; payment of yield spread premiums as unearned fee; failure to meet fiduciary duty obligations, and fraudulent misrepresentation of loan terms.  Comp. at ¶ 140.

In the twentieth cause of action, Plaintiff alleges that Defendants engaged in predatory lending by marketing the loan without disclosing all of its material terms and by including terms which were unfair, fraudulent or unconscionable.  Comp. at

18

¶ 159.

From these allegations, it appears that Plaintiff is asserting claims under the fraud and unfair business act prongs of the UCL.  In regard to the claim based on fraud or concealment, these allegations suffer from the same deficiency noted above in that they do not specify the role that Pacific played in the misrepresentations or concealment.  As stated above, Plaintiff may amend to allege, if she truthfully can do so, who made the misrepresentations to her and failed to disclose material facts such that a member of the public would likely be deceived.

In regard to the claim based on unfair business practices, Plaintiff's allegations, taken as a whole, are sufficient to show that her injury was substantial, that it was not outweighed by any benefits to consumers or competition and that it could not have been avoided.  Therefore, Pacific's motion to dismiss this claim under Rule 12(b)(6) is denied.  However, for this claim to proceed, Plaintiff must establish that equitable tolling applies.

G. Claim Eighteen for Unjust Enrichment

Pacific argues that Plaintiff cannot state a claim for unjust enrichment because it is not a cause of action but rather a general principle underlying various doctrines and remedies.

California courts are split as to whether there is an independent cause of action for unjust enrichment.  Baggett v. Hewlett-Packard Co., 582 F. Supp. 2d 1261, 1270-71 (C.D. Cal. 2007) (applying California law).  One view is that it is a general

United States District Court
For the Northern District of California

principle underlying various legal doctrines and remedies.
McBride v. Boughton, 123 Cal. App. 4th 379, 387 (2004).  Another
view is that it is a cause of action and its elements are receipt
of a benefit and unjust retention of the benefit at the expense of
another.  Lectrodryer v. SeoulBank, 77 Cal. App. 4th 723, 726
(2000).  Determining whether it is unjust for a person to retain a
benefit may involve policy considerations.  First Nationwide Sav.
v. Perry, 11 Cal. App. 4th 1657, 1663 (1992).  For instance, "a
customary way of regarding a particular type of transaction may
justify the inference that the payor has assumed the risk of
mistake."  Id.

     To support her unjust enrichment claim, Plaintiff alleges
that Defendants presented her with a loan agreement with an
adjustable interest rate and which called for compensation to
Defendants for the life of the loan.  In return, Plaintiff
expected fair and truthful dealings and disclosures.  She alleges
that allowing Defendants to recoup their profits from her loan, by
a forced sale of her home, would be inequitable.

     These allegations are insufficient to state any claim for
unjust enrichment against Pacific.  Plaintiff does not specify
what benefit Pacific received from her loan and why it would be
unjust for Pacific to retain that benefit.  This claim is
dismissed with leave to amend for Plaintiff to remedy these
deficiencies, if she truthfully can do so.

United States District Court
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

H. First Claim for Declaratory Judgment

The Declaratory Judgment Act permits a federal court to "declare the rights and other legal relations" of parties to "a case of actual controversy."  28 U.S.C. § 2201; see Wickland Oil Terminals v. Asarco, Inc., 792 F.2d 887, 893 (9th Cir. 1986).  The "actual controversy" requirement of the Declaratory Judgment Act is the same as the "case or controversy" requirement of Article III of the United States Constitution.  Am. States Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1993).  Under the Declaratory Judgment Act, a two-part test is used to determine whether jurisdiction over a claim for a declaratory judgment is appropriate.  Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).  First, the court must determine if an actual case or controversy exists within its jurisdiction.  Id.  Second, if so, the court must decide whether to exercise its jurisdiction. Id.

All causes of action have been dismissed on statute of limitations grounds and some have been dismissed for failure to state a claim upon which relief can be granted.  Because all claims have been dismissed, there is no case or controversy between Plaintiff and Pacific.  Therefore, Pacific's motion to dismiss the claim for declaratory relief is granted.  However, because Plaintiff has been granted leave to amend some of her claims, the dismissal of this claim is also with leave to amend.

21

CONCLUSION

For the foregoing reasons, Pacific's motion to dismiss Plaintiff's claims against it is granted.  The claims that are dismissed without leave to amend for failure to state a claim upon which relief may be granted cannot be reasserted against Pacific in an amended complaint.  The claims for breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty and the UCL claim based on unfair business practices are sufficiently plead, but are dismissed with leave to amend for Plaintiff sufficiently to allege equitable tolling.  The following claims are dismissed with leave to amend for failure to state a claim and for failure sufficiently to allege equitable tolling: (1) RESPA; (2) violation of California Civil Code section 1632; (3) fraud; (4) UCL claim based upon fraud; (5) unjust enrichment; and (6) declaratory relief.

If Plaintiff chooses to file an amended complaint, she must do so within two weeks from the date of this order.  If she does not file an amended complaint within this time, her claims against Pacific will be dismissed for failure to prosecute.  There is one claim against Saxon remaining in this case.  The case management conference scheduled for February 22, 2012 is vacated.  The Court will schedule another case management conference at a later date,

once it has been determined whether Plaintiff may proceed on any

of her claims against Pacific.

    IT IS SO ORDERED.

Dated:  2/3/2012

                                    CLAUDIA WILKEN
                                    United States District Judge